IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **City of Chicago,** | Case No. 25-cv-13377 |
| Plaintiff, | Judge: Hon. Sara L. Ellis |
| v. | Magistrate: Hon. Daniel P. McLaughlin |
| **Ford City Condominium Association, et al., Defendants.** | Removed from the Circuit Court of Cook County, Illinois, Case No. 20231401241 |

## MOTION TO APPROVE SALE OF THE PROPERTY

Plaintiff City of Chicago moves this honorable court to authorize the sale of this distressed condominium complex. In support thereof, the City states:

### Background

The City of Chicago filed the instant case in September 2023 regarding a distressed condominium association. The City's complaint names the condo association, every unit owner, every mortgage lienholder, the bankruptcy trustee in possession of the condominium association, and the mechanic lien holders. At its filing, there were over 400 defendants named in the complaint. The condominium complex contains 319 units across 7 buildings. There is a high rise, two medium rises and four low rise buildings. The complaint cites numerous building code violations including violations related to broken elevators, crumbling exterior walls, broken plumbing, and the deteriorated electrical systems. The complex has suffered due to long-term deferred maintenance and poor management. The elevators are frequently out of service, stranding people in the upper floors of the high rise. The association has a huge past due bill for elevator repair, so elevator contractors are unwilling to do additional work to fix the elevators.

The condominium association is the subject of a bankruptcy case, 21-5193 in the Northern District of Illinois. A bankruptcy trustee was appointed by the court to manage the affairs of the condominium association. That trustee hired a property manager, collected monthly assessments, and paid the bills with the moneys collected. From the outset, the trustee was unable to collect enough money to properly manage the property. The bankruptcy trustee determined that the cost to repair the property was over $20 million and that cost far exceeded the ability of the association to fund such repairs. The trustee recommended that the property be sold and solicited bids for the property. After securing several bids, the trustee determined the condominium association did not actually own the property so the trustee did not have the authority to sell. Ultimately, the confirmed bankruptcy plan includes the sale of the property.

The City's complaint contains a count pursuant to the Distressed Condominium Act seeking the deconversion and sale of the property. Pursuant to 765 ILCS 604/14.5, the City of Chicago petitioned the Circuit Court of Cook County to declare that the property is a distressed condominium and to order the property sold. The state court already declared the property a distressed condominium and the motion to order the property sold was scheduled to be heard on Monday November 3, 2025.

During the pendency of the state court matter, the court ordered the appointment of a limited receiver to market and sell the property. The court appointed Collateral Trustee, Inc to take the bids previously secured and determine if those bidders remained interested. The limited receiver determined that only one previous bidder was still interested. The sole bidder offered $6 million for the property. The court ordered the receiver to negotiate a purchase and sale agreement ("PSA") with the buyer. That PSA was to be discussed in court on Monday November 3, 2025,

with the receiver and buyer believing that the court would authorize the receiver to execute the PSA.

## Filed Objections Have Been Resolved

All the objections raised in the briefings have been resolved. Two central objections to the deconversion and the draft PSA were related to federal lenders and their assertion of rights pursuant to HERA, 12 U.S.C. §4511 et seq. After negotiations between the City and the federal lenders, the City believes that those objections are satisfied. (We are still awaiting final approval from the federal lenders. The language in the motion and the draft order was reviewed by their attorneys.) With the language in the draft order, the federal lenders are protected and the sale can move forward.

Wherefore, the City moves this court as follows:

1. Authorize the receiver to negotiate the final PSA and execute the PSA;
2. Authorize the receiver to execute any and all documents necessary to complete the sale of this property;
3. Authorize the receiver to establish an escrow account for the remaining proceeds to be kept and segregated into the respective shares of each unit owner pursuant to 735 ILCS 65/14.5(d);
4. Authorize the receiver to take any other action in furtherance of the sale that a reasonable and prudent seller would take.
5. Order the receiver to file its preliminary distribution no later than 45 days after the closing on the property;

Dated: February 6, 2026

Respectfully submitted,

/s/Greg Janes
Assistant Corporation Counsel
Atty. No. 90909
2 North LaSalle, Room 320
Chicago, Illinois 60602
(312)744-9555
Greg.janes@cityofchicago.org
For the City of Chicago